**Edward DULCAN and Mendelle T. Berenson, Plaintiffs**

v.

**Dr. Robert MARTIN, Chairman, et al., Defendants**

**Civ. A. No. 74–1498.**

United States District Court, District of Columbia.

Oct. 18, 1974.

---

2. The notice gave much more information than is usually given in a notice under Rule 23(c) (2).

Joseph H. Sharlitt, Joseph J. Lyman, and Neal E. Krucoff, Washington, D.C., for plaintiffs.

John D. Hawke, Jr. and Thomas B. Wilner, Washington, D.C., for intervenor Frank H. Rich.

C. Francis Murphy, Corp. Counsel for the Dist. of Columbia, Louis P. Robbins, Principal Asst. Corp. Counsel, John A. Earnest and John S. Suda, Asst. Corp. Counsel, and Matthew S. Watson, Acting Gen. Counsel, Dist. of Columbia Bd. of Elections and Ethics, Washington, D.C., for defendants.

Before WRIGHT, Circuit Judge, and GREEN and FLANNERY, District Judges.

PER CURIAM:

This case is before this court on the defendants' motion to dismiss. Plaintiffs are qualified voters registered as Democrats in the District of Columbia. They seek a judgment declaring Sections 401(b)(2) [1] and 401(d)(3) [2] of the District of Columbia Self-Government and Governmental Reorganization Act [3] unconstitutional and a mandatory injunction ordering the defendant Board to place on the November 5, 1974 general election ballot the Democratic candidates for at-large membership on the District of Columbia Council who finished third and fourth in the September 10, 1974 primary, as well as the Republican candidate who finished third in his primary (there being no fourth Republican candidate), with appropriate instructions to the voters in the November 5, 1974 election that each may vote for any four candidates. Plaintiffs allege that Sections 401(b)(2) and 401(d)(3) violate

1. Section 401(b)(2) reads:

In the case of the first election held for the office of member of the Council after the effective date of this title, not more than two of the at-large members (excluding the Chairman) shall be nominated by the same political party. Thereafter, a political party may nominate a number of candidates for the office of at-large member of the Council equal to one less than the total number of at-large members (excluding the Chairman) to be elected in such election.

2. Section 401(d)(3) reads:
Notwithstanding any other provision of this section, at no time shall there be more than three members (including the Chairman) serving at large on the Council who are affiliated with the same political party.

3. Pub.L. 93–198, 93d Cong., 87 Stat. 774 (1973).

plaintiffs' rights under the First and Fifth Amendments to the Constitution by limiting their right to vote to not more than two at-large candidates of the same political party since four at-large candidates are to be elected.

The District of Columbia Self-Government and Governmental Reorganization Act provides for election of a Council for the District of Columbia. The Council is made up of thirteen members, one of whom is the chairman elected at large. Four additional councilmen are elected at large and eight are elected from wards in the District. The purpose of the limitations contained in Sections 401(b)(2) and 401(d)(3) is to insure minority representation on the council since the voter registration in the District of Columbia is 76.65 per cent Democratic. H.R.Rep. No. 93–703, 93d Cong., 1st Sess. 13 (1973).

The District of Columbia Self-Government and Governmental Reorganization Act was signed into law by the President of the United States on December 24, 1973. On May 7, 1974, pursuant to its provisions, the Act was submitted to the voters of the District and was approved by a majority. From that date on plaintiffs have had the opportunity to raise the issue on which this lawsuit is based. They waited until October 11, 1974 to file their suit. In the meantime the educational process to prepare the voters of the District for their first self-government election in 100 years and the election process itself have proceeded. In fact, the election process which will culminate on November 5, 1974 is already in the last stages of its development. July 12, 1974 was the deadline for filing petitions for the Council primary elections. On August 26, 1974 there was a hearing on the design of the at-large member ballot for the primary election. September 6, 1974 was the deadline for filing petitions for the general election. On September 10, 1974 the primary election was held and the results thereof were certified by the Board on September 25, 1974. In the primary election, as provided by the Act, the voters were limited to voting for two at-large candidates, with the two candidates receiving the highest number of votes being placed as the candidates of their party on the general election ballot. On October 3, 1974 the order in which the at-large candidates will appear on the ballot was determined by lot, as required by law. The period of time during which absentee ballots for the general election will be received will begin on October 21, 1974. And, of course, the ballots for the November 5, 1974 election have already been printed.

Plaintiffs now ask this court to order the defendant Board to reprint the ballots and add the names of the third and fourth ranking Democratic candidates and the third ranking Republican candidate in the party primaries held on September 10, 1974. In effect, plaintiffs asked this court to rewrite in part the statute, which the Congress has passed and the President has approved, by holding Sections 401(b)(2) and 401(d)(3) unconstitutional, despite the fact that the Act contains no severability clause.

We believe plaintiffs have waited too long in bringing their allegations of unconstitutionality of the Act for this court to act responsibly without interfering with the date of the November 5, 1974 election. A court must have time for study and reflection. The judicial process does not work well in a hurry. Even if we were to find Sections 401(b)(2) and 401(d)(3) unconstitutional, it would be most appropriate that Congress be given the opportunity to reform its legislation, particularly since Congress has indicated such a desire by failing to include therein a severability clause. *See* Reynolds v. Sims, 377 U.S.

533, 586, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

In Reynolds v. Sims, *supra*, the Supreme Court cautioned against taking action in a case where the election was imminent, even where constitutional defects in the election process have already been found. The Court stated:

> However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, *even though the existing apportionment scheme was found invalid.* In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree. As stated by MR. JUSTICE DOUGLAS, concurring in Baker v. Carr, [369 U.S. 186, 250, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)] "any relief accorded can be fashioned in the light of well-known principles of equity."

377 U.S. at 585, 84 S.Ct. at 1393, 1394 (emphasis added; footnote omitted).

We heed the Supreme Court's caution in this case, where constitutional invalidity has yet to be demonstrated. Using the well-known equitable principle of laches as our guide, we dismiss plaintiffs' complaint without prejudice to its refiling at a more appropriate time.

So ordered.